David C. Parisi, Esq. (162248)
Suzanne Havens Beckman, Esq. (188814)
PARISI & HAVENS LLP
212 Marine Street, Suite 100
Santa Monica, California  90405
(818) 990-1299 (phone)
(818) 501-7852 (facsimile)
dcparisi@parisihavens.com
shavens@parisihavens.com

Attorneys for Plaintiff Steven Eddy, on
behalf of himself and all others similarly situated

# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| STEVEN EDDY, individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **COMPLAINT FOR:** |
| *v.* | 1.  **Violations of the Video Privacy Protection Act, 18 U.S.C. § 1710;** |
| VIZIO, INC., a California corporation, VIZIO HOLDINGS, INC., a Delaware Corporation, and COGNITIVE MEDIA NETWORKS, INC., a Delaware corporation, | 2.  **Violations of Cal. Civ. Code § 1799.3;** |
| *Defendants.* | 3.  **Violations of Cal. Bus. & Prof. Code §§ 17200, *et seq.*;** |
| | 4.  **Violations of Cal. Bus. & Prof. Code §§ 17500, *et seq.*; and** |
| | 5.  **Violations of Cal. Civ. Code §§ 1750 *et seq.*** |
| | **DEMAND FOR JURY TRIAL** |
| | **CLASS ACTION** |

Plaintiff Steve Eddy, by and through his attorneys, upon personal knowledge as to himself and his own acts and experiences, and upon information and belief as to all other matters, complain and allege as follows:

## NATURE OF THE ACTION

1.      Defendants Vizio Holdings, Inc., a Delaware Corporation ("Vizio Holdings"), Vizio, Inc. ("Vizio"), and Cognitive Media Networks, Inc. ("Cognitive") (collectively, "Defendants") have undertaken one of the largest private surveillance programs known by installing what is known as "Automatic Content Recognition" ("ACR") software on millions of consumer televisions. Through their ACR, Defendants monitor (in real-time) what millions of citizens are watching and create detailed user-profiles that they then disclose to data brokers and sell to advertisers.

2.      Yet Defendants never asked consumers for or received their consent before they began monitoring and profiling them. And, Defendants never disclosed that the ACR was on their televisions.

3.      Accordingly, this putative class action lawsuit seeks (i) to prevent Defendants from continuing to monitor consumers with their Smart TVs, and (ii) actual damages for those who purchased Vizio Smart TVs.

## PARTIES

4.      Plaintiff Steve Eddy is a natural person and a citizen of the State of California.

5.      Defendant Vizio Holdings, Inc., is a Delaware corporation. Its principal place of business is located at 39 Tesla, Irvine, California 92618. Vizio Holdings does business throughout the United States and the State of California, including in this District.

6.      Defendant Vizio, Inc., is a California corporation. Its principal place of business is located at 39 Tesla, Irvine, California 92618. Vizio does business throughout the United States and the State of California, including in this District.

7.      Defendant Cognitive Media Networks, Inc., is a California corporation. Its principal place of business located at 1663 Mission Street, San Francisco, California 94103. Cognitive does business throughout the United States and the State of California, including in this District.

1

**JURISDICTION AND VENUE**

2          8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

3  U.S.C. § 1331 as this action arises under the VPPA, which is a federal statute. Additionally, the

4  Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one

5  member of the Class is a citizen of a different state than the Defendants, (ii) the amount in

6  controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions

7  under that subsection apply to this action.

8          9.      This Court has personal jurisdiction over Defendants because Defendants conduct

9  business in California, are headquartered in California, and because the events giving rise to this

10  lawsuit occurred, in substantial part, in California.

11          10.     Venue is proper in the United States District Court for the Northern District of

12  California pursuant to 28 U.S.C. § 1391(b) because Defendant Cognitive maintains its headquarters

13  in this District, and Defendants Vizio Holdings and Vizio conduct significant business in this

14  District.

15

**INTRADISTRICT ASSIGNMENT**

16          11.     Pursuant to Civil Local Rule 3-2(e), this case shall be assigned to the San Francisco

17  Division.

18

**FACTUAL BACKGROUND**

19  **Defendants' Smart TVs Capture Data About Consumers Without Consent.**

20          12.     Defendants Vizio Holdings and Vizio were founded in California in 2002. They

21  make millions of televisions every year, including so-called "Smart TVs" that can be connected to

22  the Internet. Notably, Defendants made their Smart TVs so that consumers can watch videos using

23  internet programs like Netflix, and other "on-demand" services. Consumers pay more for "Smart

24  TV" features."

25          13.     Defendant Cognitive—which was purchased by Defendants Vizio Holdings and

26  Vizio in 2015—is a software company that makes "Automatic Content Recognition" software

27  ("ACR"). ACR is used to figure out exactly what content is being viewed on a television.

28

Defendants Vizio Holdings and Vizio partnered with Cognitive to install its ACR on millions of Smart TVs.

14.    By using the ACR, Defendants' Smart TVs transmit information to servers owned and operated by Cognitive. The information transmitted includes detailed data about the content being viewed on each Smart TVs. Defendants state that they collect up to 100 billion records per day that are "highly specific viewing data."

15.    Defendants also claim that the information they collect is so specific that they can determine what show or movie is being watched and even, what video game is being played. Defendants ACR works by matching snippets of the program being watched against a large database of movies, TV shows, and games. Like a digital fingerprint, Defendants analyze media for unique features and cross-reference with an existing set of known media. Once a match is found, it is recorded and attributed to a specific viewer.

16.    Defendants ACR also collects information from consumers' home computer networks through a scan. Through this scan, Defendants collect identifying information about consumers, including device names, model numbers, serial numbers, MAC addresses (unique, identifying strings of letters and number that identify devices), details about consumers' Wifi networks (such as their name's), and more.

17.    In its public SEC filings, Defendants state that they disclose information they collect through the ACR collected by the Smart TVs to various third parties. Specifically, Defendants use third-party data brokers to expand what they know about the owner of each Smart TV, such as their names, addresses, other demographic data, and likely more. Defendants send the data broker the identifying information they have about particular viewers and/or owner to the broker, the broker then searches for a match in its vast database of consumers and sends back to Defendants the "matched" data with whatever information Defendants purchased. Defendants then disclose the "matched" data to third party advertisers and others.

18.    Although Defendants collect vast amount of information about consumers, they never disclose this fact to consumers. Instead, Defendants turn ACR on by default on their Smart

TVs and begin collecting as soon practical. Moreover, Defendants actively hide that Smart TVs are installed with ACR. They do not mention ACR (or what it does) when consumers first turn on the televisions, nor do they disclose ACR in any advertising. And, consumers are never asked to consent to ACR.

**Plaintiff Eddy's Facts.**

19.     On or about January 2015, Plaintiff purchased a Vizio Smart TV, model number E600 I-b3 for approximately $749.99. Since then, Plaintiff has used the "Smart TV" features on his TV and has watched many videos. Defendants never disclosed to Plaintiff that the television he purchased was pre-installed with ACR. If that fact was disclosed to Plaintiff, he would not have purchased the television. Plaintiff has suffered damages as the result of Defendants' content.

## CLASS ALLEGATIONS

20.     **Class Definition:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3) on behalf of himself and a Class of similarly situated individuals defined as follows:

> All individuals in the United States that purchased one or more Vizio branded pre-installed with Defendants' ACR.

The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

21.     **Numerosity**: The exact number of members of the Class is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Class likely consists of hundreds of thousands of individuals. Class members can be easily identified through Defendants' or their agents' records.

22.     **Commonality and Predominance**: There are many questions of law and fact

common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include but are not limited to the following:

a) Whether Defendants disclosed that their ACR was installed on their televisions;

b) Whether Defendants unlawfully disclosed and continue to unlawfully disclose consumers' personally identifiable information and video viewing records in violation of 18 U.S.C. § 2710(b);

c) Whether Defendant Vizio unlawfully disclosed and continues to unlawfully disclose consumers' personally information or records, including records of their video viewing history, in violation of Cal. Civ. Code § 1799.3.

d) Whether Defendant Vizio's disclosures were committed knowingly;

e) Whether Defendants' conduct described herein was willful;

f) Whether Defendants' conduct described herein constitutes a violation of California's Consumers Legal Remedies Act (Cal. Civ. Code. §§ 1750, *et seq.*); and

g) Whether Defendants' conduct described herein constitutes a violation of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, *et seq.*).

23.     **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiff and the Class.

24.     **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the

1   other members of the Class.

2       25.   **Policies Generally Applicable to the Class**: This class action is appropriate for

3   certification because Defendants have acted or refused to act on grounds generally applicable to the

4   Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of

5   conduct toward the members of the Class and making final injunctive relief appropriate with respect

6   to the Class as a whole. Defendants' policies challenged herein apply and affect the members of the

7   Class uniformly and Plaintiff's challenge of these policies hinges on Defendants' conduct with

8   respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

9       26.   **Superiority**: This class action is also appropriate for certification because class

10  proceedings are superior to all other available methods for the fair and efficient adjudication of this

11  controversy and joinder of all members of the Class is impracticable. The damages suffered by the

12  individual members of the Class will likely be small relative to the burden and expense of

13  individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct.

14  Thus, it would be virtually impossible for the individual members of the Class to obtain effective

15  relief from Defendants' misconduct. Even if members of the Class could sustain such individual

16  litigation, it would not be preferable to a class action because individual litigation would increase

17  the delay and expense to all parties due to the complex legal and factual controversies presented in

18  this Complaint. By contrast, a class action presents far fewer management difficulties and provides

19  the benefits of single adjudication, economy of scale, and comprehensive supervision by a single

20  court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be

21  ensured.

22      27.   Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class

23  Definition" based on facts learned through additional investigation and in discovery.

24                          **FIRST CAUSE OF ACTION**
             **Violations of the Video Privacy Protection Act**

25                   **18 U.S.C. § 2710**
         **(On Behalf of Plaintiff and the Class)**

26      28.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

27      29.   Defendants are "video tape service providers" as defined by the VPPA because they

28

1  "engage in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery or

2  prerecorded video cassette tapes or similar audio visual materials," 18 U.S.C. § 2710(a)(4), by

3  delivering videos (*i.e.*, "similar audio visual materials" under the VPPA's definition) to consumers

4  through Smart TVs.

5      30.   Defendants facilitate the delivery of audiovisual materials to be made to consumers

6  because they make available services such as Netflix and other on-demand videos.

7      31.   Plaintiff is a "consumer" as defined by the VPPA because he is a "renter, purchaser,

8  or subscriber of goods or services from a video tape service provider" of Defendants' products. 18

9  U.S.C. § 2710(a)(1). Plaintiff paid a premium to purchase Defendants' televisions and Plaintiff and

10  Defendants intended to create a continuing and ongoing relationship between himself and

11  Defendants for the Smart TV features.

12      32.   Plaintiff has watched TV and movies on his Smart TV and Defendants have

13  monitored and collected information about what he watches along with identifying information

14  from his home network.

15      33.   Under the VPPA, the term "personally identifiable information" "includes

16  information which identifies a person as having requested or obtained specific video materials or

17  services from a video tape service provider." 18 U.S.C.  § 2710(a)(3).

18      34.   Defendants have violated the VPPA by "knowingly disclos[ing]" Plaintiff's

19  "personally identifiable information" to another person because they have disclosed and continue to

20  disclose Plaintiff's personally identifying information ("PII") to third-party data brokers and

21  advertisers.

22      35.   Defendants have not ever obtained Plaintiff's or any member of the Class's consent

23  to collect their PII or disclose their PII to third parties.

24      36.   Nor were Defendants' disclosures made in the "ordinary course of business" as

25  defined by the VPPA because the disclosures were not necessary for "debt collection activities,

26  order fulfillment, request processing, [or] the transfer of ownership." 18 U.S.C. § 2710(a)(2).

27      37.   As a result of Defendants' unlawful disclosures, Plaintiff and the Class have had

28

their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting Defendants from collecting and then releasing his and the Class's PII in the future, as well as the maximum statutory and punitive damages available under the VPPA.

**SECOND CAUSE OF ACTION**
**Violations of Cal. Civ. Code § 1799.3**
**(On Behalf of Plaintiff and the Class)**

38.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39.     California Civil Code § 1799.3(a) provides that "No person providing video recording sales or rental services shall disclose any personal information or the contents of any record, including sales or rental information, which is prepared or maintained by that person, to any person, other than the individual who is the subject of the record, without the written consent of that individual."

40.     Defendants are each a "person providing video recording sales or rental services" because they provide the sale and rental of videos to consumers.

41.     Defendants have disclosed and continue to disclose Plaintiff's personal information and the contents of records prepared or maintained by them to third parties, including data brokers and advertisers.

42.     At all times Defendant Vizio has acted willfully. And, no exemption provided by Cal. Civ. Code § 1799.3 (b) applies.

43.     Defendants have not obtained Plaintiff's or any member of the Class's consent to allow them to collect their personal information and viewing records, nor to disclose their personal information and viewing records to third parties.

44.     As a result of Defendants' unlawful disclosures, Plaintiff and the Class have had their statutorily defined right to privacy violated. Plaintiff seeks an injunction prohibiting Defendant Vizio from collecting and then disclosing his and the Class's personal information in the future, as well as the maximum statutory and punitive damages available under Cal. Civ. Code § 1799.3(c)(1).

**THIRD CAUSE OF ACTION**
**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200, *et seq.***
**(On Behalf of Plaintiff and the Class)**

45.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

46.    California's Unfair Competition Law ("UCL"), Cal Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.

47.    The UCL prohibits any unlawful, unfair, or fraudulent business act or practice, including the employment of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact. A business practice need only meet one of the three criteria to be considered unfair competition.

48.    The specifications of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the specifications of a product is materially misleading.

49.    As described herein, Defendants have engaged in deceptive business practices, as defined by the UCL, by installing their ACR on Vizio Smart TVs and collecting, without authorization, consumers' viewing habits.

50.    Defendants have violated the fraudulent and unfair prongs of the UCL by knowingly installing their ACR that collects information on the specific movies or shows being watched and that performs a network scan of home computer networks to capture, amongst other things, the MAC identifiers and names of devices, and then sends the collected information to Defendant Vizio, Inc.

51.    Defendants did not disclose that the Smart TVs contain the ACR because they knew consumers would not purchase the Smart TVs if they knew of that fact.

52.    Furthermore, Defendants never sought or obtained consumers' consent to install or operate their ACR on consumers' Smart TVs.

53.    As such, Defendants have caused substantial injury to consumers through their

fraudulent and unfair conduct described above. The injuries caused by Defendants' fraudulent and unfair conduct are not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided. Defendants knew or had reason to know that Plaintiff and the Class could not have reasonably known or discovered the existence of the ACR.

54.     Defendants' fraudulent and unfair conduct occurred during the marketing, distribution, and sale of Smart TVs, and therefore occurred in the course of Defendants' business practices.

55.     Defendants' conduct directly and proximately caused Plaintiff and the Class actual monetary damages in the form of the price paid for the Smart TVs.

56.     If Defendants had disclosed that their ACR was installed and operating on the Vizio Smart TVs Plaintiff and members of the Class would not have purchased the Smart TVs.

57.     Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order (1) requiring Defendants to cease the fraudulent and unfair practices described herein; (2) requiring Defendants to restore to Plaintiff and each Class member any money acquired by means of unfair competition (restitution); and, (3) awarding reasonable costs and attorneys' fees pursuant to Cal. Code Civ. Proc. § 1021.5.

## FOURTH CAUSE OF ACTION
### Violations of the Consumers Legal Remedies Act
### Cal. Civ. Code §§ 1750, *et seq.*
### (On Behalf of Plaintiff and the Class)

58.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

59.     The Consumers Legal Remedies Act ("CLRA") applies to Defendants' actions and conduct as described herein because it extends to transactions that are intended to result, or which have resulted, in the sale of goods or services to consumers.

60.     Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

61.     Plaintiff and each member of the Class are "consumers" as defined by Cal. Civ.

1  Code § 1761(a).

2      62.   Defendants' Smart TVs are "goods" within the meaning of Cal. Civ. Code § 1761(a).

3      63.   As described herein, Defendants have engaged in deceptive practices, unlawful

4  methods of competition, and/or unfair acts as defined by Cal. Civ. Code §§ 1750 *et seq.*, to the

5  detriment of Plaintiff and the Class.

6      64.   Defendants, acting with knowledge, intentionally and unlawfully brought harm upon

7  Plaintiff and the Class by installing their ACR on Vizio Smart TVs and collecting, without

8  authorization, consumers' viewing habits.

9      65.   Specifically, by not disclosing that their ACR was installed on the Smart TVs,

10  Defendants violated Cal. Civ. Code § 1750 in at least the following respects:

11          a.   In violation of § 1770(5), by representing that the Smart TVs had

12               characteristics, ingredients, uses, benefits, or quantities which they did not

13               have;

14          b.   In violation of § 1770(7), by representing that the Smart TVs were of a

15               particular standard, quality, or grade of which they are not; and

16          c.   In violation of § 1770(9), by advertising the Smart TVs with the intent not to

17               sell its goods as advertised.

18      66.   Defendants' unfair or deceptive acts or practices were capable of deceiving a

19  substantial portion of the purchasing public.

20      67.   Defendants did not disclose facts about their ACR to consumers that purchased the

21  Smart TVs because they knew consumers would not purchase the Smart TVs if they knew of the

22  ACR.

23      68.   Defendants were under a duty to Plaintiff and the Class to disclose that the Smart

24  TVs contained the ACR because:

25          a.   Defendants were in a superior position to know that the ACR was installed on

26               the Smart TVs;

27          b.   Plaintiff and the Class could not reasonably have been expected to learn or

28

discover that Defendants included the ACR on the Smart TVs;

    c.    Defendants knew that Plaintiff and the Class members could not reasonably have been expected to learn or discover that Defendants included the ACR on the Smart TVs; and

    d.    Defendants knew that Plaintiff and Class members would not purchase the Smart TVs if they knew of the ACR.

69.    By failing to disclose that the Smart TVs contained the ACR, Defendants have knowingly and intentionally concealed material facts and breached their duty not to do so.

70.    The facts concealed or not disclosed by Defendants to Plaintiff and the Class, including that the Smart TVs contained the ACR, are material in that a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Smart TVs.

71.    Plaintiff and the Class reasonably expected that their televisions would be free from ACR.

72.    The existence of ACR on a television is a material term for the purchase of a television, and a primary reason to not purchase a particular television.

73.    Defendants did not disclose facts about their ACR to consumers that purchased the Smart TVs because they knew consumers, acting reasonably under the circumstances, would not purchase the Smart TVs if they knew of the ACR.

74.    Through the omissions detailed herein, Defendants wrongfully induced Plaintiff and the other members of the Class to purchase the Smart TVs when they otherwise would not have purchased them.

75.    As a direct and proximate result of Defendants' violations of Cal. Civ. Code §§ 1750, *et seq.*, Plaintiff and each Class member have suffered harm in the form of paying monies to purchase the Smart TVs when they otherwise would not have purchased them.

76.    Under Cal. Civ. Code § 1780(a) and (b), Plaintiff, individually and on behalf of the Class, seeks an injunction requiring Defendants to cease and desist the illegal conduct alleged in this Complaint, and all other appropriate remedies for its violations of the CLRA. Plaintiff disclaims

any claim for damages under the CLRA at this time.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Steve Eddy on behalf of himself and the Class respectfully requests that the Court enter an order:

A.      Certifying this case as a class action on behalf of the Class defined above, appointing Steve Eddy as representative of the Class, and appointing his counsel as class counsel;

B.      Declaring that Defendants' actions, as set out above, violate the VPPA (18 U.S.C.   § 2710), Cal. Civ. Code § 1799.3, the CLRA (Cal. Civ. Code §§ 1750, *et seq.*), and the UCL (Cal. Bus. & Prof. Code §§ 17200 *et seq.*);

C.      Awarding damages, including statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D.      Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

E.      Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable;

F.      Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiff and the Class; and

G.      Awarding such other and further relief as the Court deems reasonable and just.

DATED: January 11, 2016                         By: _/s/David C. Parisi_____
                                                David C. Parisi, Esq. (162248)
                                                Suzanne Havens Beckman, Esq. (188814)
                                                PARISI & HAVENS LLP
                                                212 Marine Street, Suite 100
                                                Santa Monica, California  90405
                                                (818) 990-1299 (phone)
                                                (818) 501-7852 (facsimile)
                                                dcparisi@parisihavens.com
                                                shavens@parisihavens.com

                                                Attorneys for Plaintiff Steven Eddy, on
                                                behalf of himself and all others similarly situated

1

2                          **DEMAND FOR JURY TRIAL**

3           Plaintiff demands a trial by jury for all issues so triable.

4   DATED: January 11, 2016                    By:  /s/David C. Parisi
5                                              David C. Parisi, Esq. (162248)
                                               Suzanne Havens Beckman, Esq. (188814)
6                                              PARISI & HAVENS LLP
                                               212 Marine Street, Suite 100
7                                              Santa Monica, California  90405
                                               (818) 990-1299 (phone)
8                                              (818) 501-7852 (facsimile)
                                               dcparisi@parisihavens.com
9                                              shavens@parisihavens.com

10                                             Attorneys for Plaintiff Steven Eddy, on
                                               behalf of himself and all others similarly situated
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28